[Civ. No. 5818. Second Appellate District, Division One.—March 5, 1928.]

JOHANNA LESEM, Appellant, v. EDITH TERRY, Respondent.

J. L. Murphey for Appellant.

Page, Nolan, Rohe & Hurt, George W. Nilsson and Jerome O. Hughes for Respondent.

CONREY, P. J.—The defendant, whose true name is Eva Sophia Lesem, is an unmarried woman and is a daughter of the plaintiff. "Edith Terry" is a name assumed by the defendant and is the name under which she acquired any interest she may have in the property involved in this action.

The briefs filed herein by counsel for appellant contain numerous expressions which can only be construed as disrespectful to the trial court and to the judge who tried the case. It would be laborious and time-consuming to segregate these expressions and strike them from the briefs. It would impose upon appellant, an aged woman, a burdensome expense in the filing of new briefs if those now here should be stricken from the files. The objectionable statements have no effect except to increase the difficulties of the court in its endeavor to consider the arguments presented.

The original complaint in this action was filed on the fourteenth day of April, 1923. In that complaint plaintiff sought to obtain a decree quieting title to lot one in block eleven in the city of Beverly Hills. Plaintiff alleged that in December, 1921, she purchased said lot at the price of $7,500, paying $5,000 in cash out of her own funds, and taking the property subject to an existing mortgage of $2,500, and thereafter took possession of the lot and of the house thereon, installed her furniture therein and made it her place of residence. Plaintiff alleged that the defendant resided on said premises with the plaintiff until the fifteenth day of March, 1923, when the defendant, during the temporary absence of the plaintiff, bolted and barred the house against the plaintiff and thereafter excluded the plaintiff therefrom and claimed to be the sole owner thereof. Plaintiff alleged that at and prior to the time of purchase of said premises the defendant resided with the plaintiff and acted as plaintiff's secretary, and was given full charge of all business matters of the plaintiff, and was given authority to draw moneys on the plaintiff's bank account, and that the plaintiff put full confidence and trust in the defendant; that in the deed of conveyance of said real property the defendant caused her own name to be inserted therein

as grantee, but promised and agreed that she would hold the property for plaintiff and convey it to her at any time; that plaintiff believing in the integrity and loyalty of the defendant and in her promises, permitted the property to remain in the defendant's name as Edith Terry ever since said time; that the defendant paid nothing on account of the purchase price and gave no consideration therefor and was, in fact, without any property or income of her own; that prior to the commencement of the action plaintiff requested the defendant to convey said real property to the plaintiff in pursuance of the said trust, but the defendant failed and refused to make such conveyance. In addition to her prayer concerning the real property plaintiff requested judgment that plaintiff is the owner of all the personal property in the house on said premises, with certain stated exceptions. By amendment to her complaint, the plaintiff included in her pleading an extensive statement of facts concerning the relations, which for many years past had existed between the plaintiff and the defendant, together with other members of the family, and the family history, particularly in relation to property and business, and with much detail of circumstances charged that at the time of the purchasing of said real property, and for some years prior thereto, the defendant had planned and schemed to obtain all of the property of the plaintiff prior to the death of the plaintiff, and that the conduct of the defendant whereby she obtained a conveyance of said real property to her own name as grantee was in pursuance of said plan and scheme, and that the consummation thereof was obtained by taking advantage of the bodily and mental weakness and suffering of the plaintiff; that the plaintiff being at that time very ill and in a suffering condition was unable to and did not prevent the placing of her funds in a joint account with the defendant, and that under like circumstances not only the said lot one in block eleven, but other described real property was purchased with funds of the plaintiff and title taken in the name of the defendant. Concerning said lot one in block eleven and other property described in the action, the complaint as amended further alleged a conspiracy between the defendant and one Parker, pursuant to which the plaintiff was excluded from said premises and steps were taken to have the plaintiff declared insane and incompetent. It was

not alleged, however, that any formal insanity proceeding was actually commenced.

The defendant, by answer and by cross-complaint, raised issues fully covering the merits of the action, and among other things contended that the conveyance of said lot one, block eleven, to the defendant was by the plaintiff intended and declared to be and was a gift to the defendant. The defendant further sought to quiet her own title to said real property and to establish her ownership of sundry articles of personal property.

It is at once apparent that these pleadings, which alone extend to more than 100 typewritten pages, furnished material for an extensive trial; that they did so is evidenced by a reporter's transcript of more than 2,000 pages. At the conclusion of the court's findings of fact, which were in 46 paragraphs covering multitudinous issues of both major and minor significance, the court determined therefrom that the defendant is the owner of the described real property in her own right and not subject to any trust for the plaintiff, and that the defendant is the owner of certain described personal property. Judgment was entered accordingly, and from this judgment the plaintiff appeals.

There are numerous assignments of error, but the briefs are wanting in any orderly statement of the points on which appellant relies, and so are hard to follow through. In general terms, it may be said that appellant claims that the evidence is insufficient to justify some of the findings of fact, and also claims that the court erred in denying her motion for a new trial.

Finding VII reads as follows: ''That it is true that plaintiff and not defendant caused the premises described in the complaint to be conveyed by deed to defendant in defendant's name for the purpose and with the intention of making a gift of said premises to the defendant, and that defendant was actually given said property by plaintiff in consideration of love and affection, and ever since the date of said conveyance has been and now is the owner thereof.'' In paragraph XXII the court found: ''That it is true that defendant never delivered any transfer or conveyance of said premises to the plaintiff. That it is also true that defendant and plaintiff had many quarrels and controversies and that in the course of one of said quarrels and contro-

versies defendant offered a conveyance of said home property to plaintiff, but that plaintiff refused to accept the same." Concerning these findings counsel for appellant contends: First, that the evidence is insufficient to prove that any gift of said real property was made to the defendant; and, second, that if any gift was made in the first instance, then the evidence is insufficient to sustain the finding that the defendant did not thereafter reconvey the property to the plaintiff. While the complaint did not allege that the defendant ever made such reconveyance, much evidence was taken on that assumed issue, and the plaintiff attempted to prove that the reconveyance was in fact made. The questions thus presented in reality cover the principal issues of the case.

The court found that it was not true that all of the money paid for said property was the money of the plaintiff. We think that this finding is contrary to the evidence. The only evidence under which it could have been contended that any of said money was property of the defendant is the evidence that funds of the plaintiff had been deposited in bank in the joint names of the plaintiff and the defendant, and that a part of those funds was used in paying for said real property. ■ But such establishment of such a joint account to which the defendant contributed nothing did not vest in the defendant any ownership of said funds. It did authorize and permit her to draw money from that account for purposes appropriate to the manner in which the parties were living together, but this did not make defendant an owner of the funds. (*Denigan* v. *Hibernia etc. Society,* 127 Cal. 137 [59 Pac. 389]; *Mutual Ben. Life Ins. Co.* v. *Clark,* 81 Cal. App. 546 [254 Pac. 306].) ■ Assuming, therefore that the court had found, as it should have found, that the consideration for the real property was paid wholly by the plaintiff, we are brought to the simple question whether or not the conveyance as made was a gift to the defendant. The plaintiff testified that she did not learn that the deed was in her daughter's name until five or six weeks after it was made, and then the defendant told her it had been thus made; that the defendant at that time promised that she would at any time deed all of her property back to her whenever the plaintiff wanted it. On the other hand, Mr. Beasley, the bank officer in whose presence the

plaintiff and the defendant had some conversations while the transaction was pending about the time when the deed was placed in escrow in his bank, stated (Trans., p. 210) that in December, 1921, or January, 1922 (which was the time when the transaction of purchase of lot one, block eleven, was pending), he was present at a conversation in which the plaintiff and the defendant were discussing the matter of ''just how they would take title''; that they asked him questions (p. 221) concerning what would happen in the case of death if the property was deeded to one or the other or both of them, etc.; that after some discussion (p. 225) Mrs Lesem said ''She would take—or have the property taken in Miss Terry's name and Miss Terry would sign the escrow instructions.'' Myer Newberger, an acquaintance of plaintiff and defendant and an occasional visitor at their home, testified that Mrs. Lesem, on a stated occasion while talking about another piece of property which she was buying, said to him that ''this belongs to Eva—this and the things that are in it. I will go over there and live over there.'' This was in response to his question asking Mrs. Lesem what she was going to do with *this* property. The context shows that he was referring to said lot one in block eleven. Testimony substantially to the same effect was given by Mrs. Newberger and by Lottie Frankenthal. The defendant herself gave testimony which may be summarized as in substance showing that at the time when the purchase was determined upon of said lot one, block eleven, the plaintiff ''said that she was glad to give it to me as a gift as she had intended.''

Without following the evidence in further detail, we are satisfied that the evidence is sufficient to sustain the court's finding to the effect that the lot when conveyed to the defendant was so conveyed at the instance of the plaintiff and with the intention of making a gift thereof to the defendant.

We come now to the question of reconveyance. Upon cross-examination of the defendant she testified in substance that in August, 1922, a controversy arose between herself and the plaintiff, wherein the plaintiff told defendant that defendant was a thief and a swindler, ''and she hadn't come from New York to be done out of her property.'' That thereupon defendant said she didn't want anything that was begrudged her and immediately she called up certain persons and arranged for the preparation of

several deeds. Two of these deeds conveyed to plaintiff other real property which had been taken in the defendant's name. The third deed was a conveyance of the property which is the subject of the present action. The fourth was an assignment of mortgage. The witness stated that she "delivered" these instruments all at the same time to her mother. With respect to the deed in question here, she said, "I gave it to my mother and she refused it." She further said, "I saw it lying with the other deeds afterwards where she put them on the table"; that she destroyed this deed "after mother again refused it." The time of this second "refusal" was stated to have been in February shortly before the plaintiff left the house. The witness stated that the plaintiff said, "I don't want the house. I told you that before. I meant you to have the house, and I want you to have the house. And I said, 'All right, if you feel that way about that, I will keep it, and if you want, when I sell it I will give you the $5000 that you originally invested in it. And she said, 'You may do as you like about that, but I don't want that, either.'" At that time this deed, together with the other deeds, was lying on the table in the defendant's room. The witness further testified: "Q. Well, the parcel that—the deed that you say you destroyed after giving it to your mother,— A. I didn't say I gave it to her. I said I offered it to her and she refused it." Concerning the asserted refusal of plaintiff to accept the deed to this property, the plaintiff was examined in reference to the defendant's testimony: "Q. . . . she states that after she gave them to you that you told her you wouldn't take the deed to the home place, or words to that effect; that you didn't want it. What about that? Did you so state to her? A. I never said such a thing, no, no." The plaintiff further testified that at the time of the interview, when it is claimed the deeds were delivered, "I didn't touch them"; that she did not look at the deeds at that time. "I left them there." Again: "When I wanted to put my hand to it my daughter said, 'You can't take them yet. They are not right.'" Other evidence in the record indicated that there were in fact at that time some errors in the instruments which required correction. The plaintiff testified that she did not see these deeds again until February, when she found them in that same room, but that the deed to the lot

in controversy here was not there. In connection with the offer of plaintiff's evidence on this subject attention was called to the fact that the witness, in a deposition, had stated "that there was never four deeds delivered." Counsel for defendant admitted that the witness had so testified and stated that he was expecting to have the witness now explain that because when she went to get the deeds she found only three, she thought that the deed had not been delivered. It is not necessary to more extensively quote or state the evidence on this question. It has become very clear that the evidence is conflicting. This being so, and there being substantial evidence in support of the finding by the trial court that the defendant did not deliver any deed of conveyance of said premises to the plaintiff, we are of the opinion that the finding should stand as made.

■ It is contended by appellant that the court erred in denying her motion for a new trial. In so far as the motion rested upon the claim that the evidence was insufficient to sustain the findings, no more need be said. But it is further contended that a new trial should have been granted upon the ground of newly discovered evidence. To sustain this last claim, several affidavits were introduced. In many particulars the contents of these affidavits may be eliminated from consideration because they relate to matters not admissible in evidence. Others are merely cumulative upon points concerning which evidence was produced. Others are insufficient because there is no showing of due diligence to obtain the testimony of the witnesses at the trial of the case. Others relate to questions which might have been but were not propounded to witnesses who testified at the trial. After these items have been excluded, very little remains to be considered. To set forth these items and discuss them in relation to the case would add many pages to this decision. This is not necessary. We have read the affidavits, and have endeavored to give them due consideration. We are of the opinion that the proposed new evidence, even if the admissible part of it had been given at the trial, would not have led the court to make findings different in their effect and result from those that were made. This is particularly true in reference to the witness Mrs. Dazian, whose testimony is one of the principal subjects of these affidavits. We are satisfied that the court did not err in refusing to

grant a new trial for the purpose of hearing the proposed additional testimony.

The judgment is affirmed.

Houser, J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1928.

Preston, J., dissented.